# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America <br> v. <br> VINCENT RICHMOND, a/k/a "Goon," DESHAWN WHEELER, CHRISTOPHER LEWIS, and KEVIN BRYANT <br><br> *Defendant(s)* | Case No. 14-6363-Valle |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __9/12/2014 to 10/15/2014__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 1951 <br><br> 21 USC 846, 841(a)(1) and 841(b)(1)(A) <br><br> 18 USC 924(c), 924(o) and 2 | The defendants did knowingly and intentionally conspired to obstruct, delay, or affect commerce or the movement of any article or commodity in commerce, by robbery; conspired and attempted to possess with the intent to distribute five or more kilograms of cocaine; and conspired to and did carry and used firearms to further and during the commission of a crime of violence and a drug trafficking offense, in violation of the cited sections. |

This criminal complaint is based on these facts:

See the attached affidavit.

☐ Continued on the attached sheet.

_____
Complainant's signature

Michael J. Connors, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/16/2014__

_____
Judge's signature

City and state: __Fort Lauderdale, Florida__     Alicia O. Valle, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Michael J. Connors, being duly sworn, state:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since June of 1998. I am currently assigned to the Broward County High Intensity Drug Trafficking Area ("HIDTA") Task Force consisting of various federal, state and local law enforcement agencies.

2. I have learned the following information from first-hand observations in my official capacity, along with information received from other law enforcement officers as well as an informant. This affidavit is submitted for the limited purpose of establishing probable cause that Vincent RICHMOND ("RICHMOND"), a/k/a "Goon," Deshawn WHEELER ("WHEELER"), Christopher LEWIS ("LEWIS"), and Kevin BRYANT ("BRYANT") conspired to obstruct, delay, or affect interstate commerce or the movement of any article or commodity in interstate commerce, by robbery; conspired and attempted to possess with the intent to distribute 10 kilograms of cocaine; and conspired to and did carry and use firearms to further and during the commission of a crime of violence and a drug trafficking offense, in violation of Title 18, United States Code, Section 1951; Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846; and Title 18, United States Code, Sections 924(o), 924(c) and 2. Because this affidavit is for the limited purpose of setting forth probable cause only, it does not contain every fact known to me about the investigation.

3. Numerous recordings of telephone conversations and meetings were obtained during the course of this robbery reverse sting investigation. The following is a summary of pertinent portions of some of the recorded conversations:

   A. On or about September 12, 2014, an informant introduced RICHMOND and "his

Page 1 of 5

cousin" at a video and audio recorded meeting at the parking lot of the Westfield Broward Mall in Plantation, Broward County, Florida to ATF Special Agent Michael Connors who was working in an undercover role ("UC").  The UC represented himself to be a disgruntled narcotics courier seeking someone to rob 10 kilograms of cocaine from a Mexican Drug Trafficking Organization ("DTO") that employed the UC as a courier to transport two kilograms of cocaine every three to four weeks.  The UC would take custody of the two kilograms of cocaine to transport at different parking lots located in Broward County from two armed men driving a motor vehicle with a "trap" or a hidden compartment that contained 10 kilograms of cocaine.  The UC would provide the location of the parking lot where the transfer of the kilograms of cocaine for the UC to transport was to occur after the meeting site was learned by the UC during a telephone call received from a member of the DTO.  The UC said his participation in the robbery could not become known because the Mexican DTO would kill him and members of his family as retaliation.  The UC stated he wanted two of the kilograms of cocaine stolen during the robbery as payment for his involvement.  The UC displayed a photograph on his telephone of how the kilograms of cocaine to be stolen would be packaged.  The UC told RICHMOND and "his cousin" if they were unqualified or unwilling to perform the proposed robbery to "walk away" and "we never met."  RICHMOND's "cousin" was rejected as a potential robber by the UC when the "cousin" advised he had not previously committed a robbery.  The UC stated a rookie was not what he wanted.  RICHMOND expressed his willingness and his interest in performing the robbery.  RICHMOND informed the UC that the UC's involvement in the robbery needed to remain secret because "bodies" would likely result from the robbery, which the UC understood to mean the two men delivering the cocaine would be murdered.  RICHMOND said he would use a "team of four" to commit the robbery and that the robbers would be armed with guns

RICHMOND had available.  RICHMOND provided the UC RICHMOND's telephone number so the UC could contact RICHMOND who identified himself as "Goon."  The meeting concluded after RICHMOND agreed to meet the UC at a future date to introduce the UC to the persons RICHMOND wanted to use to help commit the robbery.

B. On or about September 13, 2014, the UC received a text from RICHMOND that read: "I want to talk to u."  During a subsequent recorded telephone conversation, RICHMOND asked the UC if the UC wanted to buy drugs from RICHMOND so the UC could earn money while waiting for the robbery to happen.

C. On or about October 2, 2014, a video and audio recorded meeting occurred between RICHMOND, the CI and the UC at the parking lot of the Westfield Broward Mall in Plantation, Broward County, Florida.  The UC scheduled the meeting so RICHMOND could introduce the UC to the persons RICHMOND had recruited to commit the robbery.  RICHMOND told the UC that RICHMOND had individuals to help commit the robbery that included a person with "seven bodies," which the UC understood to mean seven killings.  RICHMOND explained to the UC that the other persons RICHMOND recruited did not want to meet the UC but they were ready to commit the robbery.  The UC stated the UC needed to meet the persons that would help RICHMOND commit the robbery to learn how the robbery would be done and so the others would recognize the UC because the UC did not want to be hurt while the robbery was committed.  The UC said another meeting would have to be planned.

D. On or about October 9, 2014, a video and audio recorded meeting occurred at the parking lot of the Westfield Broward Mall in Plantation, Broward County, Florida, between the UC, RICHMOND, and a person RICHMOND introduced as "his cousin" who was not the same male that

attended the September 12, 2014 meeting. The UC told "the cousin" and reiterated for RICHMOND what the UC had discussed during the September 12, 2014 meeting. The UC explained that the UC was a disgruntled narcotics courier seeking someone to rob the Mexican DTO for whom he worked of 10 kilograms of cocaine from a "trap" or a hidden compartment of a motor vehicle used by two armed men to deliver two kilograms of cocaine to the UC to transport. The UC said the UC wanted as his payment two of the kilograms of cocaine stolen during the robbery. When asked, RICHMOND confirmed the willingness of "his cousin" to commit the robbery by stating "he takes orders from me."

E. On or about October 14, 2014, the UC made a recorded telephone call to RICHMOND to tell RICHMOND that the UC had learned the kilograms of cocaine were to be delivered to the UC to transport the next day.

F. On or about October 15, 2014, RICHMOND, WHEELER, LEWIS and BRYANT arrived and entered an undercover facility in Broward County, Florida. The UC had told RICHMOND to come to the undercover facility to wait for the DTO to call the UC to reveal the address of the parking lot where the kilograms of cocaine for the UC to transport would be delivered and to pick up a car rented by the UC for the robbers to use to commit the robbery. During this video and audio recorded meeting, the UC reiterated for RICHMOND and explained to WHEELER, LEWIS and BRYANT that the UC was a disgruntled narcotics courier seeking someone to rob the Mexican DTO for whom he worked of 10 kilograms of cocaine from a "trap" or a hidden compartment of a motor vehicle used by two armed men to deliver two kilograms of cocaine to the UC to transport. The UC said the UC wanted as his payment two of the kilograms of cocaine stolen during the robbery. The UC instructed RICHMOND, WHEELER, LEWIS and BRYANT to beat up the UC in an attempt to hide from

the DTO the UC's involvement and participation in the robbery. RICHMOND, WHEELER and LEWIS planned to kill the two men in the cocaine laden vehicle and RICHMOND asked the UC if the UC was going to stay on the ground with "the bodies." The UC responded that the UC would flee if the two men delivering the cocaine were killed. The defendants were subsequently arrested without incident.

4. A total of approximately two guns, 22 rounds of ammunition and three pairs of gloves were seized from the possession of the defendants. A Smith and Wesson 9 millimeter pistol loaded with 16 rounds of ammunition (one round of ammunition in the chamber) was found in the waistband of WHEELER. A Bersa .380 caliber pistol loaded with six rounds of ammunition (one round of ammunition in the chamber) was seized from the waistband of LEWIS. RICHMOND, WHEELER and LEWIS were dressed in dark clothing and BRYANT had a black shirt in his possession.

5. After being advised of his *Miranda* rights and waiving the same, RICHMOND gave a recorded statement. RICHMOND admitted he recruited WHEELER, LEWIS and BRYANT. RICHMOND confessed that he was going to commit a robbery to steal cocaine.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Michael J. Connors
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me this 16th day of October 2014.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

Page 5 of 5